UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-04032-JLS Date: July 20, 2026
Title: Aaron Samuel Cotton v. NikSoft Systems, et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Kelly Davis | N/A |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING MOTION TO REMAND (Doc. 11)**

Before the Court is a Motion to Remand filed by Plaintiff Aaron Cotton. (Mot., Doc. 11.) Defendants C2 Portfolio, Inc. and C2 Platinum, Inc. opposed, and Plaintiff responded. (Opp., Doc. 12; Reply, Doc. 17.) Having held a hearing and taken the matter under submission, the Court DENIES Plaintiff's Motion.

## I. BACKGROUND

Plaintiff worked for nearly three years as a Senior UI/UX Designer for Defendants NikSoft Systems Corporation, C2 Essentials, Inc., C2 Platinum, Inc., and C2 Portfolio, Inc. (Ex. A to Corr Decl., "Complaint" ¶¶ 11–12, Doc. 1-4.) From 2022 to 2024, Plaintiff was in the process of adopting a daughter, and after the adoption was finalized, he took paternity leave. (*Id.* ¶¶ 14a–b.) As is relevant to this motion, Plaintiff alleges that, upon learning of Plaintiff's adoption process and anticipated paternity leave, his coworker Defendant Dustin Neu began to exclude Plaintiff from meetings, reduce his involvement in team decisions, and falsely take credit for his work product. (*Id.* ¶ 14c.) Around late 2024, Plaintiff complained to his supervisor regarding Neu's conduct, but the complaint was dismissed. (*Id.* at 14d.) Plaintiff began his paternity leave on January 11, 2025, and around February 7, 2025 his position was terminated. (*Id.* ¶¶ 14h–i.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-04032-JLS Date: July 20, 2026
Title: Aaron Samuel Cotton v. NikSoft Systems, et al.

Plaintiff filed his Complaint in San Luis Obispo County Superior Court on December 30, 2025. He brings claims against NikSoft Systems Corp., C2 Essentials, Inc., C2 Platinum, Inc., and C2 Portfolio, Inc. for: (1) Discrimination in violation of California's Fair Employment and Housing Act ("FEHA"); (2) Harassment in violation of FEHA; (3) Retaliation in violation of FEHA; (4) Failure to Prevent Discrimination Harassment, or Retaliation in violation of FEHA; (5) CFRA Leave Interference; (6) Breach of Express Oral Contract Not to Terminate Employment Without Good Cause; (7) Breach of Implied-In-Fact Contract Not to Terminate Employment Without Good Cause; (8) Negligent Hiring; (9) Wrongful Termination of Employment in Violation of Public Policy; (10) Whistleblower Retaliation under Labor Code §1102.5; and (11) Intentional Infliction of Emotional Distress ("IIED"). (*See generally* Compl.) Plaintiff additionally brings his harassment and IIED claims against individual Defendants Mary Moraveck, Atif Khalil, and Dustin Neu. (*Id.* at 10.)

Defendants C2 Platinum, Inc. and C2 Portfolio, Inc. ("Moving Defendants") removed the case on April 15, 2026, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Not. of Removal ¶ 13, Doc 1.) The Notice of Removal represents that there is complete diversity between Plaintiff and all Defendants except Dustin Neu, a fellow citizen of California. (*Id.* ¶¶ 16–37.) Moving Defendants nevertheless removed, alleging that Neu's citizenship should be disregarded because he was fraudulently joined. (*Id.* ¶¶ 25–37.) Moving Defendants estimate potential damages of $360,706 in lost income alone by the time of trial based on Plaintiff's annualized salary of $173,138.88. (*Id.* ¶¶ 41, 43.) Plaintiff timely filed the present Motion to Remand, arguing that Moving Defendants have not satisfied the unanimity, citizenship, or amount in controversy requirements for removal.

## II. LEGAL STANDARD

A defendant may remove a case that was filed in state court to a federal court in the same district and division if the federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a)–(b); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between the parties, *see* 28 U.S.C. § 1332. A federal court has diversity jurisdiction under 28 U.S.C. § 1332 if the parties to the action are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

A removing defendant's Notice of Removal must include "plausible allegations of the jurisdictional elements." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1069 (9th Cir. 2021). "[T]he amount in controversy allegation of a defendant seeking federal-court adjudication should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014); *see also id.* (applying *Dart* outside the CAFA context). However, "[i]t is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (cleaned up, internal quotation marks omitted). "[T]he defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "We strictly construe the removal statute against removal jurisdiction," meaning that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

## III. ANALYSIS

### A. Rule 7-3

Moving Defendants first contend that this motion should be dismissed because Plaintiff failed to comply with Local Rule 7-3. (Opp. at 17.) Under this rule, "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly . . . the substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. This conference may take place "by telephone, or via video conference at least 7 days prior to the filing of the motion." *Id.*

Here, Plaintiff's counsel contacted Moving Defendants' counsel on May 6, 2026—nine days prior to filing the motion, requesting to discuss several reasons why removal was improper, including a lack of complete diversity. (Mot. Ex. 8 at 8–10, Doc. 11-12.) The parties then met virtually on May 8—seven days prior to filing. (*Id.* at 5.) Moving Defendants insist that they made a greater effort to schedule the meeting, and that Plaintiff failed to meaningfully discuss the motion's substance or provide further legal authorities. (Opp. at 17–18.) However, the record reflects that the parties discussed the motion's substance telephonically prior to filing and disagreed over the applicable standards. The Court will not dismiss this motion under Rule 7-3.

### B. Unanimous Consent

Under 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." Plaintiff argues that removal was procedurally improper because the Notice of Removal did not establish unanimous consent. (Mot. at 13–14.)

Here, Moving Defendants offer a Declaration in Support of Removal by Savannah Corr, which clearly and unambiguously states: "All Defendants who have appeared in the

State Court Action consent to removal pursuant to 28 U.S.C. § 1446(b)(2)(C)." (Corr Decl. ¶ 8, Doc 1-3.) *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (holding that the unanimity requirement is met if "one defendant avers that all defendants consent to removal."). Thus, the unanimity requirement was satisfied.

**C. Diversity Jurisdiction**

**1. Citizenship**

Moving Defendants do not contest that Plaintiff and Neu are both citizens of California, but instead argue that Defendant Neu is fraudulently joined. (Not. of Removal ¶¶ 16, 25–37.) "[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1066 (9th Cir. 2001) (internal quotation marks omitted). "[A] non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff *could not possibly recover* against the party whose joinder is questioned." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1063 (C.D. Cal. 2012) (quoting *Sun v. Bank of America Corp.*, 2010 WL 454720, at *3 (C.D. Cal. Feb. 8, 2010)). In other words, a defendant is fraudulently joined if they "cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). There is a general presumption against fraudulent joinder, and "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting *Burris v. AT&T Wireless, Inc.*, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)).

Fraudulent joinder is governed by a distinct and more exacting standard than Rule 12(b)(6). "[T]he standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1)[.]" *Grancare, LLC v. Thrower by and through*

*Mills*, 889 F.3d 543, 549 (9th Cir. 2018) (internal quotation marks removed). A defendant who seeks to exclude the citizenship of another joined defendant on grounds of fraudulent joinder, bears a "heavy burden" requiring "clear and convincing evidence." *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009); *Hamilton Materials Inc. v. Dow. Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *see also Grancare*, 889 F.3d at 548 (upholding fraudulent joinder rulings "where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant."). Accordingly, "[t]he defendant seeking removal to federal court is entitled to present facts showing the joinder to be fraudulent." *Ritchey*, 139 F.3d at 1318; *see also Morris*, 236 F.3d at 1068 (considering summary judgment-type evidence, such as affidavits and deposition testimony).

Here, Moving Defendants argue that Neu was fraudulently joined because Plaintiff's claims of FEHA harassment and IIED against Neu cannot possibly succeed under settled law. (Opp. at 20–21.) As to harassment, Moving Defendants first argue that the claim fails because adoptive parent and paternity leave status are not protected groups recognized for FEHA harassment claims. (*Id.* at 21–22.)

FEHA proscribes harassment based on "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, reproductive health decisionmaking, or veteran or military status." Cal. Gov't Code § 12940(j)(1). To establish a harassment claim under FEHA, Plaintiff must show that: "(1) [he] is a member of a protected group; (2) [he] was subjected to harassment because [he] belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." Cal. Gov't Code § 12940 (j)(1); *Lawler v. Montblanc N. Am.*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citation modified).

Plaintiff alleges that Neu harassed him based on his forthcoming adoption and pending paternity leave. But FEHA does not identify adoptive parents or those planning to take paternity leave as protected groups, and Plaintiff does not argue otherwise in Reply. Indeed, given that the statute recognizes "harassment based on pregnancy, childbirth, or related medical conditions," the legislature notably left out paternity leave for harassment claims. Cal. Gov't Code § 12940 (j)(4)(C). Apart from Plaintiff's conclusory allegation that "all defendants harassed him on the bases of sex, gender, [and] age," Plaintiff alleges no facts that suggest Neu's actions were because he belonged to a protected group. (*See* Mot. at 8.) And Plaintiff continually reiterates that Neu's conduct was due to Plaintiff's "protected leave and adoption process." (*See, e.g.*, Reply at 3.) Thus, Neu's alleged harassment falls outside that protected by FEHA and the Court is satisfied that, even with amendment, Plaintiff could not state a legally viable claim.

Plaintiff's IIED claim fares no better. To establish a claim for IIED, a plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Wexler v. Jensen Pharms., Inc.*, 2015 WL 6159101, at *6 (C.D. Cal. Oct. 20, 2015) (internal quotation marks removed). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).

Moving Defendants argue that Plaintiff's IIED claim is preempted by the California Workers' Compensation Act ("WCA"). (Opp. at 25–26.) Where the "alleged wrongful conduct . . . occurred at the worksite, in the normal course of the employer-employee relationship . . . workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008); *see also Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014)

("[E]motional injuries sustained in the course of employment are preempted by the workers' compensation scheme and generally will not support an independent cause of action."). However, where the joined defendant's alleged conduct "contravenes public policy" or "exceeds the risks inherent in employment," such as claims of discrimination or retaliation, the WCA will not provide the exclusive remedy. *Camarillo v. Matrix N. Am. Constr., Inc.*, 2026 WL 517960, at *4 (C.D. Cal. Feb. 24, 2026).

Here, all of Plaintiff's allegations regarding Neu fell squarely within the course of his employment. Being excluded from meetings, losing once-held decision-making power, and having work product be used by a co-worker without due credit are possible risks in any employment relationship.

Nor does any of the alleged conduct come anywhere near the "outrageous and extreme" level required for IIED claims. Instead, as Defendants argue, this conduct was more consistent with "personnel-management" actions which courts have repeatedly held cannot support an IIED claim. *See, e.g., Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64–65, 80 (1996) (holding that "job or project assignments," the "assignment or non-assignment of supervisory functions," and "deciding who and will not attend meetings," are among many personnel-management decisions which are not "outrageous conduct beyond the bounds of human decency"); *see also De Peralta v. Fox Rest. Concepts*, 2018 WL 748287, at *3 (C.D. Cal. Feb. 6, 2018) ("[T]o avoid preemption for an IIED claim based on discrimination, the allegations must include something *more* than mere personnel decisions[.]"). That Neu allegedly excluded Plaintiff from meetings and decision-making, and took credit for his work product, falls squarely within this kind of "personnel-management" activity. And given that Neu was not a supervisor, but rather a similarly situated designer with no supervisory authority over Plaintiff, it is unclear how the alleged activity would even rise to the level of a "management" decision. (Neu Decl. ¶ 7, Doc 12-4.)

That said, fraudulent joinder is a heavy burden, and the Court must be satisfied that Plaintiff could not amend his Complaint to state a viable claim. Moving Defendants must meet a "heavy burden" by putting forth "clear and convincing evidence" that Plaintiff could not succeed on an IIED claim. *Hunter*, 582 F.3d at 1044; *Hamilton*, 494 F.3d at 1206. To meet that burden, in addition to showing the legal futility of the claim, Neu submitted a declaration in which he states that he and Plaintiff were employees of equal standing with no supervisory authority over one another, and that they were assigned to different aspects of their joint project with minimal overlap, foreclosing his ability to take credit for Plaintiff's work product. (Neu Decl. ¶¶ 6–7.) Furthermore, the two worked remotely and had never even met in person, and Neu describes his interactions with Plaintiff as "limited to sporadic electronic correspondence." (*Id.* ¶¶ 4, 8.)

Plaintiff failed to respond to or otherwise dispute the facts in the Neu declaration, stating only that Plaintiff complained about Neu's behavior to his supervisors. (Reply at 4.) Moreover, when given an opportunity at oral argument to proffer any additional facts that could be raised if leave to amend were granted, Plaintiff was unable to do so.

The Court therefore finds that the combination of (1) a failure to allege a viable claim in complaint; (2) the uncontested Neu declaration; and (3) Plaintiff's acknowledgment at the hearing that he is unaware of any further factual allegations that could be made, meet the exacting standard to show fraudulent joinder. Thus, Neu need not be considered when determining diversity of citizenship, and complete diversity is satisfied.

### 2. Amount in Controversy

Plaintiff additionally argues that Moving Defendants have failed to satisfy their burden of showing that the amount in controversy exceeds $75,000. (Mot. at 22.) "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible

allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. Here, Plaintiff's claimed economic damages "include[e] lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid[.]" (Compl. ¶ 15.)

Moving Defendants calculated Plaintiff's potential lost wages at the time of removal by using Plaintiff's most recent annualized salary of $173,138.88, or a monthly salary of about $14,428.24. (Not. of Removal ¶¶ 41, 43.) Since fourteen months had passed between the date of Plaintiff's termination, February 7, 2025, and the date of removal, April 15, 2026, this amounted to at least $201,995.36 in back pay alone. (*See* Opp. at 29.)

Accordingly, because Plaintiff does not dispute Moving Defendants' wage-based economic damages calculation, the Court determines the damages at stake to be well above the jurisdictional threshold. Considering that economic damages alone satisfy the amount in controversy requirement, the Court need not address Plaintiff's argument that attorneys' fees should not be considered, or that other damages are speculative. Accordingly, Moving Defendants have satisfied the amount in controversy requirement, and the Court is satisfied that it possesses diversity jurisdiction over this action.

## IV. <u>CONCLUSION</u>

For the above reasons, Plaintiff's Motion is DENIED.

Initials of Deputy Clerk: kd